PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* RAMÓN MALDONADO GARCÍA, Defendant and Appellant.

No. 4902. Argued March 7, 1933.—Decided July 19, 1933.

*Arturo Aponte* for appellant.   *R. A. Gómez, Fiscal,* for appellee.

Mr. Justice Wolf delivered the opinion of the Court.

Lucas Rivera on the afternoon of April 29, 1931, took some oxen to the municipal pound of Las Piedras and delivered them to the person in charge.   Then he went to the chief of police of that town to tell him what he had done and to express the fear that he had of being assaulted and battered by the Maldonado brothers because he had taken the oxen to the pound and they had said that they would attack him.   The chief of police went to see the defendant in this case and told him what Lucas Rivera had said, and the defendant answered that so far as he was concerned nothing would happen.   The chief of police then asked how about his brother, Francisco Maldonado, to whom the oxen belonged, and the defendant replied that his brother was in San Juan. Just about twilight, or about seven o'clock at night, Lucas

Rivera left Las Piedras for a place in the country where he lived. He alighted from the automobile in front of the house of Maximina Rivera, a close relative of his. At that time the defendant was in a shop near the house of Maximina Rivera. Lucas Rivera went about the yard of the house of Maximina Rivera and finally into the house itself. The defendant then stationed himself at the corner of the said house looking through the door wherein Lucas Rivera was and occasionally in another direction. When Lucas Rivera came out of the house the defendant began to fire at him.

These facts the jury had a right to believe from the evidence in the case.

The court in its instructions after reciting the foregoing facts said that after taking two or three steps Lucas Rivera fell wounded to the ground. The court went on to say: "Then Ramón Maldonado fled, according to the testimony of one of the witnesses of the People of Puerto Rico." Undisputed evidence was introduced tending to show that the persons who came to the aid of Lucas Rivera had difficulty in finding a doctor and transported the wounded man from one place to another until they reached a hospital in Humacao, where Lucas died. Attention was also drawn by the court that Lucas Rivera was carrying a large rope with which he moved about attempting to defend himself from the shots. The defendant at the trial did not attempt to deny the shooting but relied upon self-defense and tried to show that Lucas himself was armed. The jury found the defendant guilty of murder in the second degree and judgment was rendered accordingly.

In this court the appellant has not made a due statement of the case somewhat as we have made above. The majority, if not all of the assignments of error, are insufficient, and in the court below no due exceptions were taken to the instructions to which the assignments of error principally relate. This whole situation is pretty well covered by the

opinion of this court in *People* v. *Serrano,* 35 P.R.R. 309. There we said:

"In a motion asking for an extension of time the *Fiscal* of this court drew attention to the unfinished and irregular manner in which the brief of the appellant was prepared. In reality the motion should have been made to dismiss the appeal, giving of course the appellant opportunity to amend, as it was a criminal case. There is no assignment of error. There is no enumeration of errors; nor even their separation by space. Not only do these deficiencies exist as indicated by the *Fiscal,* but there is no 'true and concise statement of the case,' as required by Rule 42. The appellant, as in many other criminal cases, contents himself with resuming the evidence, witness by witness. The general nature of the case, the nature of the charge, the general tendency of the evidence of the government and of the defense, these are all more or less matters that should be placed in the first part of the brief and should be included in a separate paragraph or paragraphs—with an appropriate heading. The assignment of errors should then follow. Perhaps counsel was relying on the constant practice of this court to examine the record in a criminal case with care.

"We have, as apparently assumed by counsel, examined the record with care. There was evidence tending to show that the appellant, impelled by rage or jealousy with malice aforethought killed José García with a revolver. Some evidence of self-defense there was, but the jury was in no wise bound to believe it. There is not the slightest indication of passion, prejudice or partiality in the jury. The shooting took place at a ball. The evidence tended to show that the defendant, disputing over the right to dance with a girl and who had been drinking, was pushed away from the principal ball-room by friends, broke away from the restraint, and coming back fired three shots and killed José García.

"The chief effort of appellant is to attack the charge of the court. No instructions were prayed by the defendant. No exception of any kind was taken to the judge's charge; not even a general one. Counsel for the defendant may not sit by in the hope and expectation that the court will fall into error, but ordinarily objections must be made and exceptions taken at the end of the charge, similarly as in the admission and exclusion of evidence.

"In *People* v. *Lebrón,* 23 P.R.R. 615, we cited from the law regulating appeals, as follows:

" 'Section 1.—Whenever it appears from the record in any criminal case upon appeal in the Supreme Court, that any requirement of the law has been disregarded by the trial court, the judgment shall not be reversed, unless the error appearing from the record was calculated to injure the rights of either of the parties, and was duly excepted to in the trial court; *Provided, however,* That the appellate court may take cognizance of fundamental errors appearing in the record, although not excepted to, and render such judgment thereon as the facts and the law may require.

"And we said:

" 'Thereunder the court has voluntarily reversed some cases where the fundamental rights of the defendant have been disregarded and has always maintained the right to do so (*People* v. *Morales,* 11 P.R.R. 294; *People* v. *Fernández,* 14 P.R.R. 611; *People* v. *Pellot,.* 15 P.R.R. 423; *People* v. *Crespo,* 21 P.R.R. 285), but generally in the absence of exceptions we have refused to reverse unless prejudice was clearly shown. *People* v. *Rosado,* 17 P.R.R. 425; *People* v. *Ortiz,* 19 P.R.R. 306; *People* v. *Díaz,* 19 P.R.R. 526, and other cases cited therein.'

"*People* v. *Barrios,* 23 P.R.R. 772, 779, was a case where, citing *People* v. *Lebrón,* we found a fundamental error. The court below was totally wrong in its theory of self-defense. We followed the principle of *People* v. *Lebrón* and refused to reverse in *People* v. *Trujillo,* 24 P.R.R. 121; *People* v. *Hernández,* 25 P.R.R. 616; *People* v. *Ramírez,* 25 P.R.R. 260; *People* v. *Pujals,* 34 P.R.R. 382.

"We are thus reserved the right to reverse for fundamental errors, but this does not mean misstatements of the court while summing up the evidence, easily susceptible of correction, nor to slight discrepancies in the statement of the law, nor yet to erroneous tendencies of isolated remarks, especially when due instructions are to be found in the whole charge, as in the case before us. In this last connection see *People* v. *Vélez,* 32 P.R.R. 363.

"For example, in speaking of the right of self-defense, the court inadvertently said that the defendant could not act on an apparent danger. Immediately thereafter however and on concluding the court in effect told the jury that there must be some act that would induce a man of ordinary prudence to fear that his life was in peril or that he might suffer a severe injury; and on page 50 of the record a correct statement appears. In other parts of its charge the court narrated the evidence favoring the defense and substantially instructed that if the jury believed it they should acquit. The error was probably induced from the mistaken syllabus in the case of

*People* v. *Sutton,* 17 P.R.R. 328. The opinion itself does not contain the erroneous statement.

"We do not find the punishment of thirty years excessive under the circumstances of this case".

Attention has been drawn to section 300 of the Code of Criminal Procedure, which reads as follows:

"When written charges have been presented, given, or refused, or when the charges have been taken down by a reporter, the questions presented in such charges need not be excepted to or embodied in a bill of exceptions but the written charges or the report, with the indorsements showing the action of the court, form part of the record, and any error in the decision of the court thereon may be taken advantage of on appeal, in like manner as if presented in a bill of exceptions."

We have the idea that the word "charges" as used in this section refers more particularly to requests made by the defendant for instructions, either written or oral, and not to the general instructions of the court. However this may be, the Act of 1904 cited in *People* v. *Lebrón* and afterwards *People* v. *Serrano, supra,* with regard to the taking of exceptions generally, was of a later date than the Code of Criminal Procedure and was in effect a remedial statute requiring a defendant in general to take exceptions to instructions. As indicated in the *Lebrón* and *Serrano* cases, the said statute does not prevent this court from noticing fundamental errors, but the rule is that the defendant must give the court an opportunity to correct its mistakes. The idea of an exception necessarily implies a previous opportunity on the part of the court to make a correction. When section 300 says that advantage may be taken on appeal as if excepted to, it involves the idea of an objection made and an opportunity on the part of the court to correct.

Some of the circumstances recited in the opinion in the *Serrano* case, *supra,* perhaps did not exist here, but the failure to make a statement of the case and the failure to except duly to the instructions of the court definitely did exist. Like-

wise, the assignments of error were insufficient. We shall treat this latter question first.

It has been many times stated that the assignment of errors is like the complaint in the court below and should contain enough to advise this court of the nature of the error. It is not sufficient for the appellant to say that the court erred in not permitting certain questions to a witness, nor yet that the court erred in not allowing a witness to be cross-examined on facts necessarily known by him. More particularly it is not enough for the appellant to say that the court invaded the province of the jury or gave various erroneous instructions, nor to say that the court erred in instructing the jury about an imaginary flight of the defendant. Some of the assignments were not as totally deficient as the ones we have enumerated, but with the possible exception of those to which we shall refer, the stress made by the appellant is on the errors which we have attempted to indicate.

That it is necessary that the assignments of error should be more specific is shown by the following jurisprudence: *People* v. *Penbroke*, 6 Cal. A. 588; *People* v. *Fossetti*, 7 Cal. A. 629. In the former case, somewhat stronger than this one, instructions had been presented and refused to be given, but a general assignment of error in regard to instructions was held not to be sufficient. In the latter the court said that "It is due to the court that, when counsel rely upon error in the refusal to give an instruction, they should state the instruction, and point out the reasons why they think that the court erred in refusing to give it; and the same rule obtains in regard to the giving of an instruction to which objection is made," citing other cases of California.

At the hearing we were principally impressed by the fact urged by the appellant that the court on instructing the jury said that the defendant fled, according to the testimony of a witness. This witness merely said that the defendant then left the scene of action. The court made other comments.

The assignment of error should have pointed out to us considerably more than that the court erred in instructing the jury upon an imaginary flight.

Coming then to the instructions, the defendant after the court had given them, made no attempt to point out any errors in the charge or to file exceptions to it before the jury retired. No opportunity was given the court to make a correction. Not only is the cited case of Serrano, *supra,* applicable but we have stated the same proposition of law in various subsequent cases. *People* v. *Hernández, et al.,* 25 P.R.R. 616; *People* v. *Varela,* 42 P.R.R. 792; *People* v. *Macaya,* 43 P.R.R. 595. With respect to the instructions about the flight it can be seen that the court could readily have corrected the statement by telling the jury exactly what had happened. It was the duty of the defendant to give the court this opportunity. It is true that the defendant after the jury retired presented some objections and exceptions to the charge, but most of them, except the question of flight, are not the object of this appeal.

As long as such stress was made upon it, we shall further consider the matter of flight.

Not only did this witness speak of the defendant leaving the scene of action but the latter himself took the stand. He said:

"No, sir; I went on. I was afraid of him, and as I proceeded along my way he shot at me and I then turned around and we shot at each other; but my revolver only had three cartridges, and I discharged them and then I went away rapidly with the fear that I had; and when I have gone about one hundred meters, I was going full of fear trembling like a leaf, I stopped thinking that I was wounded, and when I stopped Nicolás García who was behind me said: 'Ramón, listen, stop, give me your revolver.''

This was all testimony from which the court or the jury might have got the idea, in addition to the fact that the defendant left the place of the shooting that he had in fact fled.

However, a flight does not need always to be a thing done rapidly. A man may slowly leave the scene of action and still be said to have fled. In no case do we find that the defendant was prejudiced by the instructions.

We have examined the record with respect to the other assignments of error and find nothing fundamental. We shall not discuss them, with the exception of the assignments that the court gave a wrong instruction with respect to murder in the second degree and the motion for a new trial.

The court in its instructions said that premeditation was an unnecessary element for a conviction of murder in the second degree. This was an error, and we so held in the case of *People* v. *Roldán,* 27 P.R.R. 719.

This was a case where the defendant went to a place where he knew that the deceased would go, lay in wait for him, and shot and killed him. The information was for murder in the first degree and the facts adduced at the trial would have given the jury the right to bring a verdict for the crime charged if the jury did not believe the theory of self-defense raised by the appellant. The verdict, however, was for murder in the second degree. Moreover, the court was not bound, under the decision in *Sparf* v. *United States,* 156 U. S. 51, to give any instructions in regard to manslaughter.

The appellant maintains that when the court gave the assailed instruction the jury might have believed that they were convicting only of manslaughter instead of murder in the second degree. There was no evidence tending to show a case of manslaughter, and we repeat that no instructions in regard to manslaughter were necessary. Therefore, the defendant suffered no prejudice.

The mistake on the part of the court would have been corrected if counsel had drawn attention to the *Roldán* case, which was presumably well known to him.

With respect to the motion for a new trial, nothing was covered by it that could not be reached by an appeal from

the judgment itself, and as we find no error, or at least no prejudicial error, in the judgment, we shall not further consider it.

We find the instructions sufficient in regard to self-defense. The court was not mistaken in saying that all the conditions for self-defense must exist before it could avail a defendant. It may be that the court ought not to lay too much stress upon the fact that every element should be present but again we find no prejudicial error, especially in the absence of an exception. This covers several of the assignments of error.

Finding no fundamental error, the judgment appealed from will be affirmed.

Mr. Justice Hutchison concurs in the judgment.